ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **DANIEL MÉNDEZ RIVERA**<br><br>Recurrente<br><br>v.<br><br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN**<br><br>Recurrido | KLRA202400613 | **REVISIÓN** procedente del **Departamento de Corrección y Rehabilitación**<br><br>Caso Núm.:<br>**B705-29272** |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

## SENTENCIA

En San Juan, Puerto Rico, a 28 de enero de 2025.

Comparece ante nos, mediante *Petición de Revisión Administrativa*, por derecho propio y en *forma pauperis*, Daniel Méndez Rivera (Méndez Rivera o Recurrente), integrante de la población correccional de la Institución Ponce Adultos 1000. Mediante el recurso presentado, el Recurrente nos solicita que revisemos la *Resolución*,[1] número de caso: B705-29272, emitida el 24 de junio de 2024 por el Comité de Clasificación y Tratamiento (CCT), adscrito al Departamento de Corrección y Rehabilitación (DCR).

Por las razones que discutiremos a continuación, confirmamos la determinación del CCT.

## I.

Desde el 18 de abril de 2007, el Recurrente extingue una sentencia total de ciento once (111) años al haber sido encontrado culpable de Asesinato en Primer Grado, Robo agravado, Apropiación Ilegal de Vehículo y por Portación y Uso de Armas Blancas.[2] Según

---

[1] Apéndice del *Escrito en Cumplimiento de Resolución*, Anejo I, págs. 8-9.
[2] *Íd.*, pág. 1.

el DCR, la fecha hasta la cual debe cumplir es hasta el 9 de mayo de 2031 y cumple la totalidad de su sentencia el 20 de agosto de 2115.

Originalmente, Méndez Rivera fue clasificado a custodia máxima. Luego de cumplir varios años de su sentencia, el 25 de junio de 2018, fue reclasificado de custodia máxima a custodia mediana. El 12 de junio de 2024, como parte de una evaluación rutinaria de custodia, la técnico de servicios socio-penales asignada al caso preparó un *Informe para Evaluación del Plan Institucional* (*Informe*) que cubre el periodo de 13 de junio de 2022 hasta el 12 de junio de 2024. Tras realizar una evaluación de la conducta del Recurrente, así como de los otros factores aplicables, se recomendó que el Recurrente se mantuviera en custodia mediana.

Así las cosas, el 24 de junio de 2024, el CCT se reunió y acordó ratificar la custodia mediana. Como fundamento para la ratificación, expuso que "[l]a reevaluación no necesariamente tiene como resultado un cambio de custodia o vivienda asignada, su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir".[3] Aunque el CCT reconoció que la puntuación arrojada de tres (3) equivale a una clasificación mínima, el CCT utilizó la modificación discrecional para un nivel de custodia mayor debido a la gravedad del delito.[4]

En la *Resolución* final que emitió el 24 de junio de 2024, el CCT señaló que el Recurrente ya había sido bajado de nivel de custodia, de máxima a mediana. No obstante, reconoció que el ajuste de custodia realizado, tras cumplir aproximadamente once (11) años de su sentencia, se considera hecho a poco tiempo con relación a la sentencia impuesta.[5] También resaltó que el Recurrente

---

[3] *Íd.*, pág. 4.
[4] *Íd.*
[5] *Íd.*, pág. 9.

ha sido querellado previamente por, entre otras razones, poseer un celular en la institución penal y por poseer sustancias controladas.[6] En vista de todo esto, el CCT concluyó que Méndez Rivera requería tiempo adicional en su actual custodia.[7]

El próximo día, 25 de junio de 2024, Méndez Rivera presentó un *Recurso de Reconsideración para Cambio de Custodia*, en la que informó su deseo de apelar la determinación del CCT.[8] Arguyó que en los aproximadamente seis (6) años que llevaba en custodia mediana, no había sido querellado, por lo que las querellas a las que hace referencia la *Resolución* ocurrieron mientras se encontraba bajo custodia máxima.[9] También se enfocó en que el CCT concluyó que el Recurrente había pasado poco tiempo en custodia mediana, así como cuestionar el uso de modificaciones discrecionales para un nivel más alto, específicamente el de gravedad del delito.[10]

No obstante lo anterior, el 3 de julio de 2024, el DCR emitió una determinación en la que no acogió el recurso en reconsideración de Méndez Rivera.[11] Señaló que:

> El Comité de Clasificación y Tratamiento determinó utilizar la modificación discrecional "Gravedad de Delito" en consideración de las circunstancias de los delitos cometidos. Según se desprende, de la información sometida[,] el confinado indicó que el día de los hechos[,] fue a cobrarle un dinero que le debían. Que surgió una discusión y fue atacado con un cuchillo y agredido físicamente por el Sr. José Rodríguez, logrando quitarle el cuchillo al señor Rodríguez y lo agredió en el pecho.[12]
> [...]
> Por otro lado, el Comité de Clasificación y Tratamiento consideró otros aspectos establecidos en el Manual para la Clasificación de Confinados como lo son la fecha prevista para referir el caso ante la Junta de Libertad Bajo Palabra (9 de mayo de 2031, dentro de 7 años) y la fecha prevista de excarcelación (20 de agosto de 2115, dentro de 91 años).[13]

---

[6] *Íd.*, pág. 8.
[7] *Íd.*, pág. 9.
[8] *Íd.*, págs. 10-12.
[9] *Íd.*, pág. 10.
[10] *Íd.*, págs. 10-11.
[11] *Íd.*, págs. 13-15. Notificada y archivada en autos el 7 de octubre de 2024.
[12] *Íd.*, pág. 14.
[13] *Íd.*

Inconforme, el 30 de octubre de 2024, Méndez Vargas presentó el recurso apelativo ante nuestra consideración. En el referido escrito, señaló los siguientes errores:

> **[ERRÓ EL CCT] BASADO EN QUE AL APLICAR LA PLANILLA DE RECLASIFICACIÓN EN CASOS SENTENCIADOS, LA MISMA ARROJA UNA PUNTUACIÓN DE 3 LO QUE SUGIERE UNA CUSTODIA MÍNIMA POR LO QUE EL C.C.T. UTILIZA MODIFICACIÓN DISCRECIONAL PARA UN NIVEL DE CUSTODIA MÁS ALTO GRAVEDAD DE DELITO, QUE SIEMPRE SERÁ IGUAL HASTA CUMPLIR.**

> **[ERRÓ EL CCT] SEGÚN LOS FUNDAMENTOS PARA LOS ACUERDOS TOMADOS, SU FUNCIÓN PRIMORDIAL ES VERIFICAR LA ADAPTACIÓN DEL CONFINADO BASADO EN SU PLAN INSTITUCIONAL Y SU COMPORTAMIENTO.**

Con el beneficio de la comparecencia de la parte recurrida, el Departamento de Corrección y Rehabilitación, nos encontramos en posición para resolver los errores señalados.

## II.

## A.

El artículo 4.006 (c) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003 (4 LPRA sec. 24y (c)) faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Los organismos administrativos merecen la mayor deferencia judicial, puesto que estos tienen el conocimiento especializado sobre los asuntos que les han sido delegados. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012). Al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Íd.* Todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que la parte que las impugne debe producir suficiente evidencia para derrotarla. *Íd.* El criterio administrativo solo debe ser descartado cuando "no se

pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).

**B.**

La Sección 19 del Artículo VI de la Constitución de Puerto Rico, Const. ELA [Const. PR], LPRA Tomo 1, dispone que las instituciones penales deben conducir hacia la rehabilitación moral y social de los confinados.

A tales fines, la Asamblea Legislativa creó el Departamento de Corrección y Rehabilitación, al cual le es de aplicación lo dispuesto en la Ley Núm. 2-2011, 3 LPRA Ap. XVIII sec. 1 *et seq.* Entre las funciones del DCR, se encuentra la "clasificación adecuada y revisión continua de la clientela, conforme a los ajustes y cambios de ésta". *Íd.,* art. 5 (a). Por lo tanto, la población confinada debe ser sometida a evaluaciones periódicas "a los fines de clasificarlos y determinar el plan de acción a tomar en cada caso, en armonía con los principios de tratamiento individualizado y seguridad pública". *Íd.,* art. 10.

Para cumplir con estos propósitos, el DCR aprobó el Manual Para La Clasificación De Los Confinados, Departamento de Corrección y Rehabilitación, Reglamento Núm. 9151 de 22 de enero de 2020 (Manual). En lo pertinente, la Sección 7 del Manual establece el proceso para reclasificar a un confinado. Esta Sección dispone que "[l]a reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada".

El Apéndice K del Manual nos da instrucciones relacionadas a la reclasificación de custodia de una persona que ha sido sentenciada. Sobre las modificaciones discrecionales para un nivel de custodia más alto, dispone que "toda modificación discrecional debe estar basada en documentación escrita [...]". En cuanto a la

modificación discrecional por gravedad del delito, nos dice que debe aplicar en los casos en que:

> **La puntuación subestima la gravedad del delito**. El personal debe documentar las características del delito que aparecen en la declaración de los hechos que se están utilizando como fundamento para la decisión de la modificación.
>
> Los confinados cuyas circunstancias del delito y sus consecuencias hayan creado una situación de tensión en la comunidad, revistiéndose el caso de notoriedad pública y la comunidad se siente amenazada con su presencia.
>
> Que el Tribunal haya sentenciado al confinado a cumplir sentencia mediante Reincidencia Agravada.

*Íd*. (Énfasis nuestro).

Cualquier desviación de los criterios objetivos de la Escala de Reclasificación tiene que estar basada en las leyes y reglamentos aplicables. Debemos ser aún más rigurosos cuando la determinación de nivel de custodia está basada en un solo factor.

En *López Borges v. Adm. Corrección*, 185 DPR 603 (2012), el Tribunal Supremo rechazó que el DCR utilizara un solo factor exógeno para descartar la recomendación de los factores objetivos de la Escala de Reclasificación. En este caso, la determinación del CCT de no reclasificar al confinado a otro nivel de custodia estuvo basada "solamente en una disposición del Código Penal derogado". *Íd.*, pág. 613. Al considerar que el confinado era reincidente habitual, el CCT descartó "los demás elementos que se evalúan en la reclasificación, que responden al proceso de rehabilitación del recluso". *Íd.*, pág. 612. Por lo tanto, el Tribunal invalidó la determinación del DCR por constituir un abuso de discreción.

En *Lebrón Laureano v. Depto. Corrección*, 209 DPR 489 (2022), aunque el CCT consideró un factor exógeno como único factor para desviarse de los criterios objetivos, este estaba contemplado en el Manual vigente al momento de los hechos. Contrario, al caso de *López Borges v. Adm. Corrección*, "[n]o estamos ante una situación

en la cual '[s]e descartaron los demás elementos que se evalúan en la reclasificación, que responden al proceso de rehabilitación del recluso'". *Íd.*, pág. 512 (citando a *López Borges v. Adm. Corrección*, *supra*, pág. 612).

> [A] diferencia de los hechos en *López Borges v. Adm. Corrección*, supra, **el Departamento de Corrección no descartó lo reglamentado en el Manual Núm. 8281**, para amparar su determinación en un único factor exógeno a su esquema reglamentario. Al contrario, **se condujo de acuerdo con lo dispuesto en el Manual Núm. 8281**, para la evaluación del confinado a través de la Escala de Reclasificación.
>
> *Íd.* (Énfasis nuestro).

En resumen, puede haber un desvío del criterio objetivo, basado exclusivamente en un factor exógeno, **únicamente** si este factor está contemplado explícitamente por el Manual. En otras palabras, este factor tiene que ser un factor discrecional permitido.

Finalmente, el Tribunal Supremo ha resaltado que la buena conducta del confinado no será el único criterio a evaluarse. Aunque pueda ser de gran importancia en el análisis del CCT, este debe formar parte de un balance de intereses al considerar la totalidad de las circunstancias reconocidas por la ley y los reglamentos aplicables. Señaló que:

> La determinación administrativa relativa al nivel de custodia asignado a un confinado requiere que se realice un balance de intereses adecuado. Por una parte, estará el interés público de lograr la rehabilitación del confinado, así como mantener la seguridad institucional y general del resto de la población penal; de la otra, estará el interés particular del confinado de permanecer en un determinado nivel de custodia. Además, al momento de determinarse la procedencia de un cambio en el nivel de custodia, deberá considerarse una serie de factores subjetivos y objetivos, para cuya atención se requiere la pericia de la Administración de Corrección.
>
> *Cruz v. Administrador*, 164 DPR 341, 352 (2005).

**III.**

En el caso de autos, el Recurrente ha cuestionado la determinación del CCT con relación a su clasificación de custodia,

particularmente el enfoque que le dio el CCT a la modificación discrecional de gravedad del delito para clasificarlo en un nivel más alto. Tras un análisis del expediente, surge que contrario a lo alegado por Méndez Rivera, este no fue el único criterio tomado en consideración por el CCT. Aun siendo el único criterio, su utilización es una permisible por el Manual para que el CCT se aparte de los criterios objetivos de evaluación. Veamos.

La *Evaluación* del Recurrente demuestra que recibió una puntuación de seis (6) por la "Gravedad de los Cargos/Sentencias Actuales", correspondiente a "Extrema".[14] No obtuvo puntuación por "Historial de Delitos Graves Previos" ni por "Historial de Fuga o Tentativa de Fuga". Tampoco obtuvo puntuación por "Número de Acciones Disciplinarias", "Acciones Disciplinarias Previas Serias" o "Sentencias Anteriores por Delitos Graves Como Adulto- Últimos Cinco Años".[15] En los renglones por "Participación en Programas/Tratamientos" y "Edad Actual", recibió deducciones en la puntuación total de menos uno (-1) y menos dos (-2),[16] para una puntuación total de custodia de tres (3) puntos.[17]

Según la *Evaluación*, una puntuación de tres (3) en los criterios objetivos corresponde a una clasificación de nivel de custodia de "mínima".[18] No obstante, la *Evaluación* permite que se realice una modificación discrecional para un nivel más alto por la gravedad del delito. Como hemos discutido, esta modificación corresponde a si el CCT, en su discreción y a base de la totalidad de las circunstancias del caso, ante un análisis de balance de intereses, estima que la seriedad del delito amerita una clasificación mayor. En el caso de autos, el CCT optó por utilizar la referida modificación debido a que el Recurrente fue sentenciado por cometer los delitos

---

[14] *Íd.*, pág. 5.
[15] *Íd.*
[16] *Íd.*
[17] *Íd.*
[18] *Íd.*, pág. 6.

de Asesinato en Primer Grado, Robo Agravado, Apropiación Ilegal de Vehículo y Uso y Portación de un Arma Blanca. En consecuencia, el uso de esta modificación es una permitida por las leyes y reglamento aplicable, lo que constituye un ejercicio válido de la discreción del CCT.

Analizando los errores señalados por el Recurrente, es forzoso concluir que no se cometieron. En primer lugar, el Recurrente señaló como error que el CCT utilizó la gravedad del delito para clasificarlo en el mismo nivel de custodia. No se cometió este error puesto que, como hemos discutido, la referida modificación es una permisible. En el balance de intereses que realizó el CCT, el uso de la modificación está justificada. Contrario a lo que alega el Recurrente, que la gravedad del delito "siempre será igual hasta cumplir", le recordamos que este se considera a base de la totalidad de las circunstancias, que podrán cambiar en un futuro, por lo que el CCT podrá, en el ejercicio de su sana discreción, utilizar una modificación para un nivel de custodia más bajo, a base de los criterios aplicables.

Por otro lado, no se cometió el segundo error, debido a que el DCR procedió conforme a lo dispuesto en su ley orgánica y en el Manual. Como hemos señalado, la reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia. Lo mismo surge del Manual aplicable al proceso de evaluación y reclasificación. El DCR también siguió el proceso de reevaluación, por lo que no podemos concluir que hubo un error en su tramitación.

**IV.**

Por los fundamentos discutidos anteriormente, confirmamos la *Resolución* del DCR.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones